Approved: _____
DEREK WIKSTROM
Assistant United States Attorney

Before:   THE HONORABLE JUDITH C. McCARTHY
          United States Magistrate Judge
          Southern District of New York

- - - - - - - - - - - - - - - - - - - X
                                      :   20 Mag 4530
                                      :
                                      :   **SEALED COMPLAINT**
UNITED STATES OF AMERICA              :
                                      :   Violations of 18 U.S.C.
   - v. -                             :   §§ 1951, 924(c)(1), & 2
                                      :
                                      :
LAVAUGHN CAMPBELL, and                :   COUNTY OF OFFENSE:
                                      :   WESTCHESTER
KLEON MURRAY,                         :
                                      :
                Defendants.           :
                                      :
- - - - - - - - - - - - - - - - - - - X

SOUTHERN DISTRICT OF NEW YORK, ss.:

        JUSTIN M. GRAY, being duly sworn, deposes and says that he is a Special Agent with the Federal Bureau of Investigation ("FBI"), and charges as follows:

**COUNT ONE**
(Conspiracy to Commit Hobbs Act Robbery)

        1.  On or about March 2, 2020, in the Southern District of New York and elsewhere, LAVAUGHN CAMPBELL and KLEON MURRAY, the defendants, and others known and unknown, unlawfully and knowingly did combine, conspire, confederate, and agree together and with each other to commit robbery, as that term is defined in Title 18, United States Code, Section 1951(b)(1), and would and did thereby obstruct, delay, and affect commerce and the movement of articles and commodities in commerce, as that term is defined in Title 18, United States Code, Section 1951(b)(3), to wit, CAMPBELL, MURRAY, and others known and unknown agreed to rob an individual of the proceeds of certain unlawful activities affecting interstate commerce at an apartment in Mount Vernon, New York.

        (Title 18, United States Code, Section 1951.)

### COUNT TWO
(Hobbs Act Robbery)

2.  On or about March 2, 2020, in the Southern District of New York, LAVAUGHN CAMPBELL and KLEON MURRAY, the defendants, unlawfully and knowingly did commit robbery, as that term is defined in Title 18, United States Code, Section 1951(b)(1), and did thereby obstruct, delay, and affect commerce and the movement of articles and commodities in commerce, as that term is defined in Title 18, United States Code, Section 1951(b)(3), to wit, CAMPBELL and MURRAY attempted to rob an individual of proceeds of certain unlawful activities affecting interstate commerce, and CAMPBELL AND MURRAY robbed at gunpoint two additional victims of money and other personal property, at an apartment in Mount Vernon, New York.

(Title 18, United States Code, Sections 1951 and 2.)

### COUNT THREE
(Use of a Firearm)

3.  On or about March 2, 2020, in the Southern District of New York, LAVAUGHN CAMPBELL and KLEON MURRAY, the defendants, during and in relation to a crime of violence for which they may be prosecuted in a court of the United States, namely, the Hobbs Act robbery charged in Count Two of this Complaint, knowingly did use and carry a firearm, and, in furtherance of such crime, did possess a firearm, and did aid and abet the use, carrying, and possession of a firearm, which firearm was brandished during the robbery charged in Count Two of this Complaint.

(Title 18, United States Code, Sections 924(c)(1)(A)(ii) and 2.)

The bases for my knowledge and for the foregoing charge are, in part, as follows:

4.  I am a Special Agent with the FBI, and I have been involved in the investigation of the above-described offenses. This affidavit is based upon my personal participation in the investigation of this matter, as well as on my conversations with other law enforcement officers and others, and my examination of reports and records.  Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts I have learned during the investigation.  Where the contents of documents or the actions, statements, or conversations of others

are reported herein, they are reported in substance and in part, except where otherwise indicated.

### The March 2, 2020 Robbery

5. Based on my personal participation in the investigation of this matter, my conversations with law enforcement officers and others, including the victims, and my review of reports and records from the City of Mount Vernon Police Department ("CMVPD"), I have learned, among other things, the following:

    a. On or about March 2, 2020, shortly after 4:00 a.m., officers of the CMVPD responded to an emergency call reporting a home invasion and robbery at an apartment in Mount Vernon, New York (the "Apartment"). When they arrived, the CMVPD officers debriefed a man ("Victim-1") and his daughter ("Victim-2") who lived in the Apartment and were present during the robbery.

    b. Victim-1 told the officers that at approximately 3:30 a.m., there were three loud knocks on the door of the Apartment. When he opened the door, he saw three men wearing dark clothes and holding firearms. Two of the men were wearing masks, but the man in front was not. The man who was not wearing a mask struck Victim-1 in the face with his firearm. The men forced their way into the apartment, and demanded $6,000 in cash that they claimed Victim-1's son ("Victim-3," and together with Victim-1 and Victim-2, the "Victims") owed them. They repeatedly asked where Victim-3 keeps his money.

    c. According to Victim-2, she and Victim-1 were both forced to their knees in their living room and held at gunpoint by the three men, who continued to demand money. One of the three robbers stated "just clip them bro." Victim-2 then stated that she might know where Victim-3 kept his money, and led two of the three men into the laundry room next door to the apartment, where Victim-3 kept a safe containing money (the "Safe").

    d. Victim-1 told the CMVPD officers that, once his daughter led two of the three perpetrators away, he attempted to fight the remaining robber, who was one of the two wearing a mask. Victim-1 stated that he was able to grab a razor blade off of a table in the Apartment, and then had a physical struggle with the robber who had remained behind with him. The robber fought Victim-1 off and repeatedly struck him in the head and face with a firearm.

e. According to the CMVPD officers, although Victim-1 refused medical attention, his nose appeared to be broken and there was blood on his face and in various areas around the house as a result of this struggle.

f. Victim-1 told the CMVPD officers that after the struggle, the three suspects fled the apartment, taking with them some personal property from the apartment, including Victim-1's and Victim-2's cellphones, and Victim-1's wallet.

g. The CMVPD officers recovered a cellphone from the Apartment that did not belong to any of the Victims, and that had blood on it (the "Recovered Cellphone").

6. Based on discussions with Victim-3, I have learned, among other things, the following:

a. Victim-3 has engaged in credit and debit card fraud schemes, in which he obtains personally identifiable information of victims—including victims outside of the State of New York—uses that information to open accounts with financial institutions, and then withdraws money from those accounts at an ATM.

b. Victim-3 kept the proceeds from those schemes in the Safe, in the laundry room next to the Apartment.

c. Victim-3 uses the proceeds from those schemes, in part, to purchase marijuana, which he re-sells.

The Identification of LAVAUGHN CAMPBELL

7. On or about March 19, 2020, I conducted an interview of Victim-1. During the interview, I showed Victim-1 a series of six photographs, one at a time, of six individuals matching the description he had previously provided of the Target Subjects. One of the six photographs was a photograph of LAVAUGN CAMPBELL, the defendant. Victim-1 paused on the photograph of CAMPBELL and stated that he was sure that the person pictured was one of the three men who robbed him, and that CAMPBELL was the robber who was not wearing a mask. Victim-1 stated that he did not recognize any of the other individuals pictured.

8. Based on my review of information contained in a database maintained by the New York Police Department ("NYPD"), I have learned, among other things, that LAVAUGHN CAMPBELL, the defendant, is known by the NYPD to use a certain cellphone (the

4

"Campbell Cellphone"). The information contained in the NYPD database reflects that CAMPBELL provided the number of the Campbell Cellphone as his phone number to the NYPD in eight separate interactions with NYPD officers, including most recently on March 4, 2019.

9. Sprint provided historical location information for the Recovered Cellphone in response to a search warrant, and employees of the FBI prepared an analysis of that data plotting the locations of the Recovered Cellphone. In addition, T-Mobile provided historical location information for the Campbell Cellphone in response to a search warrant. Based on my comparison of the FBI analysis of the location of the Recovered Cellphone and the historical location information for the Campbell Cellphone, I have learned that in the hours before the robbery on or about March 2, 2020, the Campbell Cellphone and the Recovered Cellphone were both located in the vicinity of Linden Boulevard in Queens, then both traveled north through the Bronx at approximately the same time late on the evening of March 1, 2020 and into the early morning of March 2, 2020, shortly before the robbery. The Campbell Cellphone then returned to Queens after the robbery.

10. Based on my review of call records for the Recovered Cellphone and the Campbell Cellphone, I have learned, among other things, the following information:

a. The Campbell Cellphone was one of the three most frequent callers to and from the Recovered Cellphone in the two months preceding the robbery.

b. The Campbell Cellphone and the Recovered Cellphone were in frequent communication the morning before the robbery, and then did not exchange calls or text messages during the time the robbery occurred, or in the hours preceding the robbery when, as discussed above, historical location information showed that both phones were traveling north towards the location of the robbery.

### The Identification of KLEON MURRAY

11. Based on my review of records produced by the Sprint Corporation relating to the account associated with the Recovered Cellphone, and my discussions with representatives of the Sprint Corporation, I have learned, among other things, the following:

        a. The Recovered Cellphone was obtained from Boost Mobile, which is affiliated with Sprint Corporation, and Sprint was the service provider.

        b. On or about March 2, 2020, after the robbery, service to the Recovered Cellphone was canceled.

        c. On or about March 2, 2020, after the robbery, the account holder associated with the Recovered Cellphone established a new cellphone number on the same account.

        d. The new cellphone number was set up in an in-person transaction at a certain Boost Mobile storefront located in Queens, New York (the "Boost Mobile Store") on or about March 2, 2020 at approximately 6:12 p.m.

    12. Based on my review of information from an open-source database maintained by one of the credit reporting agencies, which is commonly used by law enforcement, I have learned that the phone number of the Recovered Cellphone is associated in that database with KLEON MURRAY, the defendant.

    13. Based on my review of surveillance footage obtained from the Boost Mobile Store, I have learned that on or about March 2, 2020, shortly before the transaction setting up a new cellphone was on the account associated with the Recovered Cellphone, a man and a woman arrived at the Boost Mobile Store in a black Mazda M3 with a certain Florida license plate (the "Mazda"). While the woman went inside the store and stood at the counter during the time the new phone was activated, the man waited outside in front of the store. I recognized the man as KLEON MURRAY, the defendant, based on my review of other photographs of MURRAY, including multiple photographs maintained in law enforcement criminal history databases.

    14. Based on my review of the analysis of historical location information for the Recovered Cellphone prepared by FBI employees, I have learned that in the hours before traveling north towards the robbery, and on many nights between January 1, 2020 and the date of the robbery, the Recovered Cellphone was located near a certain residential address in Queens, New York (the "Queens Residence"). Based on my discussions with other law enforcement officers, I know that law enforcement has conducted surveillance at the Queens Residence, and during that surveillance has seen KLEON MURRAY at that address, and has seen the Mazda parked on the street in the immediate vicinity of the residence. Based on my review of information in public records databases used by law enforcement, I have learned that the

Queens Residence is the home address of the woman who went to the Boost Mobile Store with KLEON MURRAY after the robbery on or about March 2, 2020, as described above.

WHEREFORE, the deponent respectfully requests that LAVAUGHN CAMPBELL and KLEON MURRAY, the defendants, be arrested, and imprisoned or bailed, as the case may be.

/s/ Justin M. Gray, Badge No. 27701
_____
JUSTIN M. GRAY
Special Agent
Federal Bureau of Investigation

Sworn to me through the transmission of this
Complaint by reliable electronic means, pursuant to
Federal Rule of Criminal Procedure 4.1, this

_30th_ day of April, 2020

_____
THE HONORABLE JUDITH C. McCARTHY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

7